IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs July 22, 2025, at Knoxville

## NATHAN ALLEN WALLACE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Tipton County**
**No. 9244      A. Blake Neill, Judge**

_____

## No. W2024-01466-CCA-R3-PC

_____

Nathan Allan Wallace, Petitioner, appeals from the denial of his petition for post-conviction relief in which he argued that he received ineffective assistance of counsel. After a review, we determine Petitioner failed to demonstrate that trial counsel was ineffective or that any of the alleged deficiencies were prejudicial. Consequently, the judgment of the post-conviction court is affirmed.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and STEVEN W. SWORD, JJ., joined.

Joseph B. Simmons, III, Atoka, Tennessee (at hearing and on appeal); Valerie T. Corder and Josie S. Holland, Memphis, Tennessee (on initial petition); Bo Burk, District Public Defender; Melissa Downing, Assistant Public Defender, Nolen Mooney, Ripley, Tennessee (on amended petition), for the appellant, Nathan Allen Wallace.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Mark Davidson, District Attorney General; and Walt Freeland and Sean Herd, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Petitioner was convicted of rape, aggravated statutory rape, contributing to the delinquency of a minor, and incest for incidents involving his biological daughter. *State v. Wallace*, No. W2018-01649-CCA-R3-CD, 2020 WL 768731, at *1 (Tenn. Crim. App. Feb. 14, 2020), *perm. app. denied* (Tenn. June 5, 2020). As a result of the convictions, Petitioner

was sentenced to eight years. He appealed to this Court, where his convictions were affirmed. *Id.* The supreme court denied permission to appeal. *Id.*

To establish some context for the post-conviction appeal, a brief recitation of the facts is necessary. Defendant and the victim's mother were never married. The victim was born when her parents were eighteen and twenty years old. *Id.* Her parents separated when the victim was about four years old and devised a shared custody arrangement where the victim stayed with her mother during the week and Defendant on the weekends. *Id.* Zachary Tucker testified that he knew both Defendant and the victim and attended parties at Defendant's house in the summer of 2016, where the victim drank alcohol. At the time, the victim was fourteen. *Id.* The victim tried to harm herself that summer by taking a "handful" of Advil. *Id.* at *2. After a meeting with DCS, the victim was admitted to a treatment facility and was then released to Defendant's house. *Id.* In January of 2017, a DCS investigation was initiated after the victim's mother contacted police when she saw pictures and videos of the victim on the victim's cell phone. The victim told her mother about Defendant's abuse. *Id.*

At trial, the State presented expert testimony over objection by Defendant to indicate that Defendant "groomed" the victim. *Id.* at *3. The victim told the expert that Defendant gave alcohol and marijuana to her at parties and sexually penetrated her with his fingers and penis. The victim's physical examination was consistent with penile vaginal penetration. *Id.* The victim testified about the abuse but agreed that she stayed at Defendant's house after the rape and did not have good recall about time periods or dates. *Id.* at *5.

Petitioner filed a timely petition for post-conviction relief with the help of retained counsel, in which he listed some forty-three grounds for relief, including allegations of ineffective assistance of both trial counsel and appellate counsel. Retained counsel withdrew and the Public Defender's Office was appointed to represent Petitioner. The Public Defender's Office withdrew due to a conflict of interest. Substitute counsel was appointed to represent Petitioner and an amended petition was filed. This counsel also withdrew and another lawyer was appointed. The post-conviction court held a hearing, at which Petitioner was represented by counsel, who now represents Petitioner on appeal.

At the hearing, Captain Christopher Ellwood from the Atoka Police Department testified that he investigated the allegations against Petitioner before the convictions. The investigation took place "several years ago," and he did not have his notes with him at the hearing. He explained that the victim was Petitioner's daughter. He discussed the steps used by the police department during an investigation, including explaining that the department had a designated Child Protective Intervention Team ("CPIT") that handled

child sex cases. When asked if the victim had two boyfriends during the period the rape occurred, Captain Ellwood explained that the victim "never classified them as boyfriends."

Petitioner testified that trial counsel did not prepare him for trial or discuss strategy prior to trial. He explained that he did not communicate with trial counsel "very often" and that trial counsel met with him only "two times before trial." Petitioner did not think trial counsel prepared him for trial and complained he did not see the "discovery filed until [he] got to prison." According to Petitioner, they never discussed any witnesses or trial counsel's investigation prior to trial. Petitioner complained that trial counsel did not obtain all the records from the Department of Children's Services ("DCS") even though trial counsel issued a subpoena and received some documents from DCS. Petitioner acknowledged that trial counsel never filed a motion to compel compliance with the subpoena and testified that trial counsel could not effectively cross-examine the victim without the "important" records from DCS that were missing. Petitioner also complained that trial counsel did not secure records from Lakeside regarding the victim's mental health treatment. Petitioner complained that trial counsel did not investigate inconsistencies in police reports, call witnesses to testify about his character as a parent, provide expert witness testimony, or introduce evidence about the fact that he passed a drug screen while the victim's mother failed a drug screen.

Petitioner did not think trial counsel was prepared to counter the allegations that he was "grooming" the victim. Additionally, Petitioner testified that trial counsel did not file any motions that would allow him to introduce evidence about the victim's previous sexual relationships.

Petitioner "had no idea" that Zachary Tucker was going to testify at trial because he was not on the original witness list. He claimed he did not find out until he was in prison that the State filed a "notice of additional witnesses" before trial. Petitioner explained that he knew Mr. Tucker because Mr. Tucker slept with the victim's mother and a few of Petitioner's girlfriends. Petitioner admitted that he also slept with one of Mr. Tucker's girlfriends but this may have given Mr. Tucker an incentive to lie.

Petitioner complained that trial counsel never questioned photos of the victim with suicidal captions such as "kill me" that allegedly were taken after the rape. Petitioner also claimed that trial counsel failed to object to the multiple remarks made by the State on his right to remain silent. Petitioner complained that the victim's testimony was inconsistent and that trial counsel failed to challenge the inconsistencies or point them out to the jury.

Trial counsel testified that he was an experienced trial attorney and had participated in "[o]ver 50, maybe over [one] hundred" trials in his career. Trial counsel communicated with Petitioner "[b]y email, dozens of times" and in person a "handful of times." He

"dispute[d] the claim that [they] only met twice." His "normal procedure" would be to discuss trial strategy with a client, but he did not have "any independent recollection" of his conversations with Petitioner. Petitioner explained that he no longer had the file from Petitioner's case, stating "[i]t was released to his power of attorney."

Trial counsel explained that his "usual course of business" was to give discovery to his clients. Trial counsel noted that Petitioner "mentioned a couple of things being in the discovery, even though he said he didn't have the discovery." Trial counsel acknowledged that Petitioner could have gotten those discovery items after his conviction but reiterated that his "general practice" was to give discovery to clients and "meet" with them "as many times as is necessary." Trial counsel also made it a point to "go over the anatomy of a trial" with his clients.

Trial counsel recalled the "overall strategy" in Petitioner's case was to "show that [the victim] was a troubled individual" and that "there was an insinuation that there was opportunity for others to have done this." According to trial counsel, cases like Petitioner's were "winnable when you have nothing more than a child saying [something happened]" and in this case the victim's physical injuries corroborated that a sexual encounter occurred. Trial counsel testified that the defense strategy "relied heavily on impeaching the victim here through text messages and through the inconsistencies about the timing" of the incidents. Trial counsel felt that he adequately cross-examined the victim.

Trial counsel testified that he was not successful in obtaining all the DCS records prior to trial despite a subpoena. Trial counsel explained that the records were delivered to the trial court for "an in-camera review" and that the trial court "indicated there was nothing exculpatory" in the records. Trial counsel did not get to review the records. Trial counsel admitted he did not subpoena any records from Lakeside and was unaware of what they contained.

Trial counsel acknowledged that he did not present evidence of drug screens at trial. Trial counsel recalled that there were inconsistencies in the reports from DCS regarding the dates of the alleged offense, and he utilized these inconsistencies at trial to impeach several witnesses. Trial counsel acknowledged he did not obtain expert witnesses to rebut the State's expert witnesses but explained that there was no "reason to think that there was any mistake" in the State's expert report. Trial counsel investigated the victim's romantic and sexual relationships but did not call any witnesses to testify at trial because had "they gotten up on the stand and said, no, I never penetrated this person, that would have absolutely been devastating to our case."

After hearing the proof, the post-conviction court issued a written order denying post-conviction relief. With regard to Petitioner's argument that trial counsel failed to

investigate and develop a defense strategy for trial, the post-conviction court found trial counsel's testimony credible. Specifically, that trial counsel testified he investigated the case and explained his strategy about the case. The post-conviction court found that Petitioner "failed to prove by clear and convincing evidence that trial counsel's trial strategy was made with inadequate preparation" and therefore deficient. Moreover, the post-conviction court found that while a "timeline of events for the jury" and additional photographs may have been "helpful," the evidence at trial established that the victim attempted suicide, was treated inpatient for suicidal thoughts, and that DCS met with the victim and her mother about their living situation. Therefore, the post-conviction court concluded that Petitioner failed to prove that trial counsel was deficient for not creating a timeline for the jury or in not introducing the other photographs of the victim.

As to Petitioner's next argument, that trial counsel failed to fully investigate all relevant reports or introduce drug test results, the post-conviction court found that Petitioner could not prove his claim because he "failed to produce any of these records or reports at the hearing." The post-conviction court also found that Petitioner failed to prove trial counsel was deficient for failure to file a Rule 412 motion because trial counsel testified that he had a "strategic reason for not pursuing this strategy," and Petitioner did not bring "the alleged boyfriends to the post-conviction hearing to testify."

The post-conviction court also determined that Petitioner failed to prove trial counsel was deficient for failing to subpoena the victim's records, including educational records, Lakeside records, psychological counseling records, therapy records, and relevant DCS records. The post-conviction court determined Petitioner's claim regarding records from education, psychological counseling, or therapy must be denied because he failed to produce those records at the hearing. With regard to the Lakeside records, Petitioner provided them at the hearing, and the records were reviewed in camera and determined not to "contain anything exculpatory and instead simply confirmed several facts that came out at trial." As a result, the post-conviction court determined that Petitioner "failed to show how the absence of these records at trial prejudiced him." The post-conviction court determined that any issue related to the DCS records was previously determined by this Court.

As to Petitioner's argument that trial counsel failed to properly advise and communicate with Petitioner, the post-conviction court determined that trial counsel's testimony was credible in that trial counsel met with Petitioner and prepared him for the case. The post-conviction court found Petitioner failed to prove trial counsel was deficient in his communication and preparation and, in any event, he failed to show that any shortcomings were prejudicial.

The post-conviction court determined Petitioner failed to show that trial counsel was deficient in failing to hire an expert to counter the State's expert or to call character witnesses because Petitioner failed to produce an expert witness or any character witnesses at the hearing.

Petitioner argued that trial counsel failed to make proper and timely objections, specifically about the State's comments on Petitioner's right to remain silent. As to this ground for relief, the post-conviction court noted that this was part of trial counsel's strategy. Petitioner failed to show how the State's comments prejudiced him and failed to prove that any of the comments undermined the outcome of the trial.

The post-conviction court determined Petitioner failed to prove trial counsel did not properly cross-examine witnesses, specifically Mr. Tucker, the victim, and Captain Ellwood. The post-conviction court determined that Mr. Tucker's testimony "appeared to be trying to assist Petitioner, rather than harming them." The post-conviction court determined that questioning Mr. Tucker about his sexual relationship with the victim's mother and/or Petitioner's other girlfriends was not relevant and may actually harm Petitioner's case. In other words, Petitioner failed to prove that trial counsel's alleged failures in cross-examining Mr. Tucker were prejudicial. With regard to cross-examination of other witnesses, the post-conviction court found that the transcript established trial counsel extensively cross-examined the witnesses and that Petitioner failed to prove trial counsel was deficient.

Lastly, the post-conviction court noted Petitioner's failure to present any evidence at the hearing related to appellate counsel's deficiencies. As a result, Petitioner was not entitled to relief.

Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred in denying post-conviction relief. Specifically, Petitioner challenges trial counsel's failure to secure pertinent records from DCS and Lakeside; failure to obtain drug screen results, failure to file a 412 motion, failure to prepare Petitioner for trial, failure to obtain expert witnesses, failure to introduce text messages between the victim and Petitioner, failure to object to prosecutor's comments about his silence, failure to properly cross-examine the victim, and failure to challenge testimony from Captain Ellwood about the victim's prior consistent

statements.[1]  The State responds that Petitioner has failed to show trial counsel was deficient or that any deficiencies prejudiced him.

The right to effective assistance of counsel is protected by both the United States Constitution and the Tennessee Constitution.  U.S. Const. amend. VI; Tenn. Const. art. I, § 9; *see also* T.C.A. § 40-30-103 (granting relief when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States).  To prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense.  *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms."  *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)).  Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Id*. at 370 (quoting *Strickland*, 466 U.S. at 694).  Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

*Goad*, 938 S.W.2d at 370 (citing *Strickland*, 466 U.S. at 697).  Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579.  We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision.  *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

A claim for post-conviction relief based on alleged ineffective assistance of counsel presents mixed questions of law and fact.  *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013)

---

[1] We limit our discussion to the issues raised on appeal.  To the extent Petitioner raised additional issues in his petition for relief, and failed to raise them on appeal, we will not address them.  *See Jackson v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("While the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal."), *perm. app. denied* (Tenn. Apr. 16, 2010).

(citing *Calvert v. State*, 342 S.W.3d 477, 485 (Tenn. 2011)). A petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). A post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. *Calvert*, 342 S.W.3d at 485 (citing *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). "Accordingly, we generally defer to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Mobley*, 397 S.W.3d at 80 (citing *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999)). However, we review a post-conviction court's application of the law to its factual findings de novo without a presumption of correctness. *Id*. (citing *Grindstaff*, 297 S.W.3d at 216; *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007); *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006)).

Petitioner argues on appeal that trial counsel was ineffective for failing to investigate inconsistencies in the victim's testimony. Specifically, Petitioner argues that the victim gave inconsistent statements about when the rape occurred and gave conflicting information about the replacement of her mattress. The post-conviction court found that trial counsel "extensively" cross-examined the victim regarding "inconsistencies in her statements" and that Petitioner failed to show trial counsel was ineffective or that he was prejudiced as a result of trial counsel's cross-examination. The evidence does not preponderate against the factual findings of the trial court as to this issue. Petitioner is not entitled to relief.

Petitioner next complains that trial counsel did not obtain drug screen results from Petitioner, the victim's mother, or the victim's stepfather. In related arguments, Petitioner complains that trial counsel failed to secure an expert witness and failed to file a 412 motion or call the victim's boyfriends to testify at the trial. However, Petitioner did not introduce the drug screen results at the hearing or on appeal, did not present expert witness testimony to rebut the State's expert, and failed to call the victim's boyfriends to testify at the hearing, and, therefore, Petitioner is not entitled to relief on this issue. "To succeed on a claim of ineffective assistance of counsel for failure to call a witness at trial, a post-conviction petitioner should present that witness at the post-conviction hearing." *Pylant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008). The post-conviction court cannot speculate as to what the testimony of the missing witness may have been at trial, and therefore, cannot determine if the testimony would have amounted to critical evidence. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Without the post-conviction hearing testimony of a missing trial witness, it is nearly impossible for a petitioner to show that trial counsel's deficient

performance in failing to discover or call a trial witness prejudiced the defense. *See Strickland*, 466 U.S. at 687. "The same is true for documents that a petitioner claims should have been presented at trial. Failure to present the documents at the post-conviction hearing makes it nearly impossible for Petitioner to show that trial counsel's deficient performance in failing to obtain or introduce the document at trial prejudiced the defense." *Pilate v. State*, No. W2017-02060-CCA-R3-PC, 2018 WL 3868484, at *5 (Tenn. Crim. App. Aug. 14, 2018), *perm. app. denied* (Tenn. Dec. 6, 2018). Petitioner is not entitled to relief.

Petitioner next argues that the post-conviction court improperly determined that trial counsel's failure to secure the victim's Lakeside Behavioral Health records and "obtain" the DCS records was not ineffective. While the Petitioner acknowledges that trial counsel subpoenaed the DCS records, he complains that they remained sealed after the trial court reviewed the records and deemed them irrelevant. The post-conviction court determined that this issue was previously determined, and we agree. "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing[,]" and "[a] full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." T.C.A. § 40-30-106(h). On direct appeal, Petitioner raised this issue and this Court rejected it, commenting that the "records do not contain any exculpatory evidence[.]" *Wallace*, 2020 WL 768731, at *6. Petitioner is not entitled to relief on this previously determined issue.

As to the Lakeside records, Petitioner subpoenaed the records and submitted them at the post-conviction hearing for an in camera review. The post-conviction court reviewed the records and determined that there was nothing exculpatory in the records and that they "simply confirmed several facts that came out at trial." The record does not preponderate against this finding by the post-conviction court. Moreover, the post-conviction court concluded that Petitioner failed to show how trial counsel was deficient for failing to introduce the records at trial or how he was prejudiced by the failure to introduce these records. We agree. Petitioner argues the records showed the victim was abused by her mother and had suicidal ideations prior to the rape, but this is hardly exculpatory. We fail to see how the introduction of these records would have benefited the defense; Petitioner is not entitled to relief.

Petitioner maintains that the State made inappropriate comments on his right to remain silent and that trial counsel was ineffective for failing to object. Trial counsel testified at the hearing that the comments were made after the introduction of the text messages between Petitioner and the victim, and trial counsel chose not to object because he wanted the text messages to come in, effectively allowing Petitioner to "testify" without taking the stand. In other words, trial counsel had a trial strategy that he chose to follow.

The post-conviction court determined counsel was not deficient for his strategic decision and chose not to "second-guess" trial counsel. Moreover, the post-conviction court determined Petitioner failed to show how he was prejudiced by the failure to object. We will not second-guess trial counsel's trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson*, 197 S.W.3d at 790. Petitioner is not entitled to relief on this issue.

Lastly, Petitioner complains that the post-conviction court did not find trial counsel ineffective for failing to properly advise and communicate with Petitioner prior to trial. The post-conviction court accredited trial counsel's testimony that they met "many" times and exchanged dozens of emails. We defer to the post-conviction court's credibility determinations. *Mobley*, 397 S.W.3d at 80 (citing *Momon*, 18 S.W.3d 152, 156 (Tenn. 1999)). To the extent Petitioner also claims that trial counsel's failure to communicate with him prior to trial somehow affected trial counsel's ability to cross-examine Mr. Tucker, the post-conviction court considered this argument and rejected it, finding that Mr. Tucker's testimony "actually appeared to be trying to assist" Petitioner rather than harm him. The evidence does not preponderate against this finding. Petitioner is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

s/Timothy L. Easter
TIMOTHY L. EASTER, JUDGE

- 10 -